UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-60155-BLOOM/Valle

VITAL PHARMACEUTICALS, INC.,

    Plaintiff,

v.

BANG DIAMONDS LLC,

    Defendant.

_____/

## ORDER TRANSFERRING CASE

**THIS CAUSE** is before the Court upon Defendant Bang Diamonds LLC's Motion to Dismiss Or, in the Alternative, Transfer Venue, ECF No. [20] ("Motion"). Plaintiff Vital Pharmaceuticals, Inc. filed a Response in Opposition, ECF No. [24], and Defendant filed a Reply. ECF No. [25]. The Court has considered the Motion, the Response, the Reply, the record, the applicable law, and is otherwise fully advised. For the reasons stated below, Defendants' Motion is granted in part and denied in part.

**I. BACKGROUND**

Plaintiff Vital Pharmaceuticals, Inc. seeks relief against Defendant Bang Diamonds LLC for (i) trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (ii) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (iii) trademark infringement under Fla. Stat. §§ 495.131 and 495.161; (iv) unfair competition under Fla. Stat. §§ 495.131 and 495.161; and (v) violations of Florida's Deceptive and Unfair Trade Practices Act, Chapter 501. *See generally* ECF No. [1]. According to the Complaint, Plaintiff has manufactured and sold products in the sports nutrition, dietary supplement, and beverage industries. *Id.* ¶ 7. Those products include Bang Energy ® drinks featuring the BANG ® Intellectual Property and the BANG ® Logo on a fleet of

vehicles, apparel, and merchandise, including jewelry. *Id.* ¶ 8. Plaintiff is headquartered in the Southern District of Florida, but its products are distributed and sold nationwide. *Id*.

Defendant is a corporation organized under the laws of the State of California with its principal place of business in San Diego. *Id.* ¶ 3. Defendant allegedly markets, distributes, and sells handmade engagement rings and fine jewelry under the name "Bang Diamonds," with the same lowercase stylized script as the BANG ® logo. *Id.* ¶ 24. Regarding Defendant's contacts with the State of Florida, Plaintiff alleges:

> Products reflecting the Infringing Logo are advertised and sold to countless consumers nationwide, including to consumers located in the State of Florida. In fact, the Terms of Sale within [Defendant]'s website set forth that shipping is available within all 48 contiguous states within the United States.

*Id.* ¶ 30.

In the instant Motion, Defendant seeks dismissal of the Complaint for lack of personal jurisdiction over Defendant. ECF No. [20] at 9. In the alternative to dismissal, Defendant requests that venue be transferred to the Southern District of California. *Id*. Defendant additionally argues that Plaintiff's claims arising under Florida law "should be dismissed for lack of standing or failure to state a claim per FRCP, Rule 12(b)(1) and 12(b)(6)."[1] *Id*. at 8-9.

In support of its Motion, Defendant has attached an Affidavit from Kevin Diep, the "sole member and operator of Bang Diamonds LLC." ECF No. [20-1] at 1. Diep avers that Defendant has no known sales to Florida consumers." *Id.* ¶¶ 4, 7. It "does not advertise or otherwise target consumers in the Southern District of Florida or the State of Florida." *Id*. ¶ 11. Diep further asserts that Defendant has no other contacts with Florida. *Id*. ¶¶ 2-15.

---

[1] Because the Court concludes that it lacks personal jurisdiction over Defendant, the Court does not consider Defendant's alternative request to dismiss the Florida claims under Rule 12(b)(1) or 12(b)(6). *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims.").

In Response, Plaintiff argues that the Court has personal jurisdiction over Defendant due to Defendant's website, which is accessible in Florida, and which offers shipping of Defendant's products "within all 48 contiguous states within the United States." ECF No. [24] at 3 (quoting ECF No. [1] ¶ 30). To the extent that personal jurisdiction is lacking, Plaintiff requests transfer of the case to the Southern District of California, rather than dismissal. *Id*. at 17.

## II. LEGAL STANDARD

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). In addressing whether personal jurisdiction over a nonresident defendant exists, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). While the Court is required to accept all of the allegations contained in the complaint as true, this tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

"Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). "Where . . . the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely

3

reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (quotation marks omitted). However, conclusory statements, "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

## III. DISCUSSION

### A. Personal Jurisdiction

Courts apply a two-part test to determine whether personal jurisdiction exists. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court determines whether the applicable state statute governing personal jurisdiction is satisfied. *Id*. Second, the court evaluates "whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment[.]" *Louis Vuitton*, 736 F.3d at 1350.

#### i. Florida's Long-Arm Statute

Florida's long-arm statute provides for both general and specific personal jurisdiction. *Louis Vuitton*, 736 F.3d at 1352 (citing Fla. Stat. § 48.193(1)-(2)). The reach of Florida's long-arm statute is a question of state law, and federal courts must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Courts of Appeal. *See id*.

In this case, Plaintiff's only argument for personal jurisdiction is based on Fla. Stat. § 48.193(1)(a)(2), which extends specific personal jurisdiction over a nonresident defendant who is "[c]omitting a tortious act within this state." ECF No. [24] at 7 (quoting § 48.193(1)(a)(2)). "[U]nder Florida law, a nonresident defendant commits a tortious act within [Florida] when he commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton*, 736 F.3d at 1353 (italics in the original; quotation marks omitted).

4

Trademark claims under the Lanham Act are indisputably "tortious acts" for the purposes of Florida's long-arm statute. *Id.* at 1353. "[I]njury from trademark infringement occurs in the state where the trademark owner resides." *Jackson v. Grupo Industrial Hotelero, S.A.*, No. 07-cv-22046, 2008 WL 4648999, at *6 (S.D. Fla. Oct. 20, 2008).

Accordingly, district courts in this district have consistently held that "allegations of trademark infringement occurring outside Florida are sufficient for long-arm jurisdiction if the owner of the mark resides in Florida." *Honus Wagner Co. v. Luminary Grp. LLC*, No. 17-cv-61317-BLOOM/Valle, 2017 WL 6547899, at *8 (S.D. Fla. Dec. 21, 2017) (citing cases). Notably, in *Licciardello v. Lovelady*, the Eleventh Circuit declined to "decide whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held[.]" 544 F.3d 1280, 1283 (11th Cir. 2008). Instead, the *Licciardello* court held that Florida's long-arm statute was satisfied "by virtue of the website's accessibility in Florida." *Id.*

Defendant argues that the website's accessibility within Florida is not sufficient to confer specific personal jurisdiction over Defendant; there must also be allegations that the website has in fact been accessed in this state. ECF No. [25] at 3. Defendant's argument draws support from *Internet Solutions Corporation v. Marshall*, wherein the Florida Supreme Court held that, to satisfy Florida's long-arm statute, a prima facie case for defamation must contain allegations that the out-of-state website was in fact "accessed by a third party in Florida." 39 So. 3d 1201, 1215 (Fla. 2010). However, the *Internet Solutions* decision depended on the elements of libel under Florida law. *Id.* at 1214-16. Because of the distinctions between defamation and infringement cases, it is debatable whether statements within *Internet Solutions* are applicable to the trademark infringement context. *See Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 947-48 (11th Cir. 2018) (recognizing that differences between the torts of defamation and trademark infringement may affect how § 48.193(1)(a)(2) operates).

Defendant's position is better supported by *Louis Vuitton*, a trademark infringement case involving an out-of-state website. In finding § 48.193(1)(a)(2) satisfied, the Eleventh Circuit in *Louis Vuitton* court did not rely solely on allegations that alleged infringements within a defendant's website were accessible in Florida. 736 F.3d at 1354. Rather, the court noted that, *in addition* to the website's accessibility, the defendant had "sold to Florida customers through that website." *Id*.

In combination, *Louis Vuitton* and *Licciardello* instruct that mere accessibility of alleged infringements on a website in Florida does not satisfy § 48.193(1)(a)(2); there must be additional allegations of injury occurring in Florida. One such additional and sufficient allegation is that the copyright owner resides in this state. *See Oviedo v. Ramirez*, No. 21-cv-23750-BLOOM/Otazo-Reyes, 2022 WL 1641865, at *7 (S.D. Fla. May 24, 2022) ("[T]he injury of the infringement occurred in Florida by virtue of the plaintiff's residence in Florida **plus** the accessibility of the website in Florida." (second alteration in the original) (interpreting *Licciardello*)).

For the foregoing reasons, the Court continues to adhere to the rule that district courts in this state have consistently applied: Florida's long-arm statute is satisfied by allegations of trademark infringement occurring on a website accessible in Florida, "if the owner of the mark resides in Florida." *Honus Wagner Co.*, 2017 WL 6547899, at *8 (citing cases); *see also Peopleshare, LLC v. Vogler*, No. 21-cv-62308-Bloom/Valle, 2022 WL 1404605, at *5 (S.D. Fla. May 4, 2022) (interpreting *Licciardello* and *Louis Vuitton* to mean that Florida's long-arm statute is satisfied by allegations of the mark-owner's residence in Florida and the website's accessibility in Florida).

Applying that rule to the present case: Plaintiff is indisputably the licensee of the copyright at issue,[2] and Plaintiff has plausibly alleged that Defendant's website is accessible in this state. ECF No. [1] ¶¶ 10, 13, 21. Defendant's affidavit does not contest either of those allegations, *see generally* ECF No. [20-1], which combine to satisfy long-arm jurisdiction under Fla. Stat. § 48.193(1)(a)(2).

### ii. Due Process

Having concluded that Florida's long-arm statute permits jurisdiction, the Court proceeds with the second step of the personal jurisdiction analysis. The Court agrees with Defendant that Due Process does not permit the Court to exercise personal jurisdiction over it in this case. *See* ECF No. [25] at 4.

The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless "his contact with the state is such that he has fair warning that he may be subject to suit there." *Licciardello*, 544 F.3d at 1284 (quotation marks omitted). "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. (quotation marks and citation omitted). Compared with the long-arm statute analysis, the due process inquiry is "more restrictive." *Internet Sols. Corp.*, 39 So. 3d at 1216.

The Eleventh Circuit has distilled the due process analysis into a three-part test: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws;

---

[2] Unlike the plaintiffs in the cases cited throughout this opinion, Plaintiff claims to be the *licensee* of the mark at issue, rather than the *owner*. ECF No. [1] at ¶ 13. Neither party has argued that this distinction is relevant for the issue of personal jurisdiction.

and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id*. (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### 1.  Prong One: "Arising Out of" or Relatedness

The first prong of the due process inquiry asks whether the plaintiff's claim "arises out of or relate[s] to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quotation marks omitted). "[A] relationship among the defendant, the forum, and the litigation is the essential foundation of *in personum* jurisdiction[.]" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

All claims in this case stem from Defendant's allegedly infringing logo. ECF No. [1] at 8-14. That logo appears on Defendant's website, which is accessible in Florida. *Id*. ¶ 30. The Complaint additionally alleges that Defendant's goods, containing the logo, were in fact sold in Florida. *Id*. However, that allegation regarding sales in Florida is contradicted by Diep's affidavit, which asserts that "Bang Diamonds has no known sales to Florida consumers." *See* ECF No. [20-1] ¶ 7; *see also id*. ¶ 6 ("Defendant has no sales activities in the state of Florida."). In light of the specific statements in the Diep affidavit that contradict Plaintiff's allegations, the burden shifts to Plaintiff "to produce evidence supporting jurisdiction." *Meier*, 288 F.3d at 1269. Defendant has produced no such evidence.[3] As such, for the purpose of the Court's analysis, Defendant's only contact with Florida is its operation of the website, which is accessible in this state.

---

[3] Plaintiff requests jurisdictional discovery to contest allegations within the Diep affidavit. ECF No. [24] at 11 n.3. The Court finds that transfer of this case to the Southern District of California, wherein the vast

Although Defendant's contact with Florida via its website is "minimal," it "is the direct cause of Plaintiff's claims." *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1272 (M.D. Fla. 2015). "At least in the case of intentional torts, such claim-causing contact is sufficient to satisfy the first prong." *Id.*; *see also Louis Vuitton*, 736 F.3d at 1356 (finding the first prong "easily satisfied" due to a defendant's "advertising, selling, and distributing of" allegedly infringing goods in this state); *Honus Wagner*, 2017 WL 6547899, at * 10 (finding similar allegations sufficient "[u]nder the broad standard applied for relatedness in this Circuit"). Thus, Plaintiff has established that its claims arise out of Defendant's contact with Florida via its website.

### 2. Prong Two: Purposeful Availment

In intentional tort causes such as this, "there are two applicable tests for determining whether purposeful availment occurred." *Louis Vuitton*, 736 F.3d at 1356. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* "This occurs when the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" *Id.* (quoting *Licciardello*, 544 F.3d at 1285-88). Alternatively, under the "minimum contacts test," a court assesses the defendant's contacts with the forum state to determine whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357.

---

majority of Defendant's sales occur, and the parties agree venue would be proper, *see infra*, is the more efficient way for this case to proceed.

The Eleventh Circuit has twice held purposeful availment to exist in the context of trademark infringement contained on out-of-state websites. In *Licciardello*, the defendant was accused of exploiting a musician's name, photograph, and apparent endorsement on his website. 544 F.3d at 1282. The defendant was previously that musician's personal manager, he was aware that the musician resided in Florida, and he had travelled to this state to assist the musician. *Id.* In finding purposeful availment under the "effects test," the Eleventh Circuit reasoned that the endorsement on the defendant's website constituted "an intentional tort, expressly aimed at a specific individual" – the musician – "whose effects were suffered in the forum." *Id.* at 1288.

*Licciardello* is distinguishable from the present case. First, whereas the *Licciardello* defendant had previously worked with the plaintiff in Florida and knew that he resided here, there is no indication in this case that Defendant was aware of Plaintiff's residency in Florida. Defendant avers that he has never visited Florida, for business or otherwise. ECF No. [20-1] ¶ 10. As Plaintiff alleges in its Complaint, its sales are nationwide, ECF No. [1] ¶ 8, and there is no allegation that Defendant knowingly targeted a Florida-based company. Moreover, *Licciardelli* preceded the decision of *Walden v. Fiore*, wherein the Supreme Court clarified that the "minimum contacts" analysis must focus on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. 277, 285 (2014). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id*. It is unclear whether *Licciardelli's* minimum contacts analysis comports with the instructions of *Walden*.

The circumstances in this case are closer to those in *Louis Vuitton*. 736 F.3d 1342. That case involved a defendant who was selling allegedly counterfeit goods on websites accessible in Florida. *Id.* The defendant "purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website," it "received orders from multiple Florida residents to ship goods into Florida," and it in fact shipped those goods into the state. *Id*. at 1357.

The court held that "[t]hese collective contacts establish that [the defendant] purposefully availed himself of the privileges of doing business in south Florida." *Id*.

But the *Louis Vuitton* court explicitly limited its holding. "We are not saying that the mere operation of an interactive website alone gives rise to purposeful availment anywhere the website is accessed." *Id.* (alteration in the original). Rather, "in addition to [the defendant's] fully interactive . . . website accessible in Florida, [the defendant] had other contacts with Florida – through selling and distributing infringing goods through his website to Florida consumers[.]" *Id*. Here, as discussed above, Plaintiff's allegation regarding Defendant's sales in Florida is contradicted by unrebutted statements in the Diep affidavit. Thus, the *only* contact Defendant has with Florida is its accessible website.

The Court concludes that Defendant's contact with Florida via its website is insufficient to satisfy either the "minimum contacts test" or the "effects test." There is no allegation that Defendant's conduct was "aimed at" Florida or that Defendant "purposefully availed himself of the privileges of doing business within" this state. *Louis Vuitton*, 736 F.3d at 1357 (quotation marks omitted). The closest such allegation is that the website advertises shipping "within all 48 contiguous states within the United States." ECF No. [1] ¶ 30. But there is no indication that the website or the Defendant specifically targets Florida or Florida residents. As the *Louis Vuitton* court concluded, mere accessibility of a website in Florida is insufficient to establish Defendant's purposeful availment. 736 F.3d at 1357; *see also Honus Wagner*, 2017 WL 6547899, at *12 (finding no purposeful availment in circumstances similar to those in this case).

Accordingly, the Court finds that Plaintiff has failed to carry its burden of establishing that Defendant purposefully availed itself of the privilege of conducting activities within Florida. *Louis Vuitton*, 736 F.3d at 1355. Due to that failure, the Court need not proceed to the third prong of the due process analysis. *Id.* at 1355 ("The plaintiff bears the burden of establishing the first two pongs,

*and if the plaintiff does so*," the burden shifts to the defendant to show that exercising jurisdiction would nonetheless "violate traditional notions of fair play and substantial justice." (quotation marks omitted; emphasis added)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Once it has been decided that a defendant purposely established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." (quotation marks omitted)). Due process does not allow this Court to exercise personal jurisdiction over Defendant because it could not have "reasonably anticipated" that its operation of the website could subject it to suit in this forum. *Licciardello*, 544 F.3d at 1284

**B. Transfer Venue**

Having concluded that the Court lacks personal jurisdiction over Defendant, the remaining question is whether the Court should dismiss this case or transfer venue "in the interest of justice." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-67 (1962) (quoting 28 U.S.C. § 1406(a) and holding that courts may transfer cases even when personal jurisdiction is lacking over the defendants). "The interests of justice generally favor transferring a case to the appropriate judicial district rather than dismissing it." *Hemispherx Biopharma, Inv. v. MidSouth Cap., Inc.*, 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009).

The parties agree that venue would be appropriate in the Southern District of California, the location of Defendant's store and most of its sales activity. ECF No. [20] at 9; ECF No. [24] at 17. There is no question that venue would be proper there, as it is both the "district in which [Defendant] resides," and the district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). The Court agrees that transfer rather than dismissal is "in the interest of justice." 28 U.S.C. § 1406(a).

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [20]**, is **GRANTED IN PART AND DENIED IN PART**;

2. Pursuant to 28 U.S.C. § 1406(a), the Clerk is directed to **TRANSFER** this case to the United States District Court for the Southern District of California.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 29, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record